# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL E. McKINZY, SR., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 10-CV-0452-W-DGK |
| NORFOLK SOUTHERN RAILROAD, | ) ) ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT SUMMARY JUDGMENT

This case is one of approximately 40 lawsuits brought by Plaintiff *pro se* Michael McKinzy against various defendants alleging discrimination in their refusal to hire him. Pending before the Court is Plaintiff's Motion for Summary Judgment (doc. 10) and Defendant's Motion for Summary Judgment and Sanctions (doc. 12).

Finding no merit to Plaintiff's allegations the Court enters summary judgment in favor of Defendant Norfolk Southern Railroad. Because another federal judge has previously warned Plaintiff that a similar lawsuit filed against Norfolk in the District of Kansas was meritless, the Court orders Plaintiff to reimburse Norfolk its reasonable attorneys' fees incurred in defending this lawsuit and further enjoins Plaintiff from filing any additional lawsuits against Norfolk in this District without leave of court.

### Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the

burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991) (citation omitted).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248. But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

**Facts**

Viewing the evidence in the light most favorable to the Plaintiff, for purposes of resolving the pending motion the Court finds the facts to be as follows. The Court has omitted controverted facts, facts immaterial to the resolution of the pending motion, and facts not properly supported by the record.

Since 2004 Defendant Norfolk Southern Railroad has used an on-line application system in which applicants can submit their applications to a particular job number. Because Norfolk typically receives at least 100 on-line applications for each position, the next step in the process is for a screener to select approximately 15 candidates for each position to be invited by email to a "recruiting session," where they fill out additional paperwork and are interviewed in person.

While an applicant may submit his or her application for any job in any location, Norfolk has found that it typically does not make sense to consider individuals who do not live in the area because Norfolk does not pay relocation expenses, and it has learned from experience that applicants may say they are willing to move but often change their mind. After looking for candidates who live in the area, screeners may select or decline an applicant for further consideration based on qualifications and experience. Applicants who are declined because of location, qualifications, or experience are sent a form email that refers to the job number and states: "Thank you for your interest in the [TITLE] position in [CITY/STATE] and for participating in our recruiting process. Following a competitive review of your background and qualifications, regrettably we are unable to offer you further consideration at this time."

Applicants also will be declined if there is a decision to put a position "on hold" or not to fill the position, whereupon they are sent a form email that refers to the job number and states:

> Thank you for your interest in the [TITLE] position in [CITY/STATE]. Regrettably, we are no longer seeking to fill the position for which you applied. Please feel free to check our Careers site at www.nscorp.com/careers to see if there are other employment opportunities that may be of interest to you. We wish you the very best in your future career endeavors.

Applicants also will be declined if they are invited to a recruiting session and do not attend, and candidates who are declined due to being a "no show" typically are sent a form email that refers to the job number and states: "Thank you for your interest in the [TITLE] position in [CITY/STATE]. Recently, you were invited to attend a recruiting session for this position. We are contacting you because you did not attend this invitation-only session. Therefore, regrettably, we are unable to offer you further consideration at this time." Norfolk's system is designed so that these rejection emails appear to be personalized, but the system is automated so that all applicants who are declined for the same reason receive the same email except for their name.

Norfolk's job applicants are invited to disclose Equal Employment Opportunity information on a voluntary basis, but this information is not accessed by or available to screeners.

Plaintiff Michael McKinzy is an unemployed 41 year-old African-American journeyman electrician. He submitted his central on-line application to defendant on December 13, 2006. The current version of his application lists his residence address as 8948 Bluejacket, Apt. 1110, Overland Park, Kansas. Between 2006 and 2008 he applied for over 400 jobs, he was invited to at least five "recruiting sessions," but he did not attend any of the recruiting sessions. From January 2009 to the present he applied for over 200 jobs in 18 states (Alabama, Delaware, Illinois, Indiana, Georgia, Kentucky, Maryland, Mississippi, Missouri, Ohio, Pennsylvania, New Jersey, New York, North Carolina, South Carolina, Tennessee, Virginia, and West Virginia).

With respect to CD13653, a signal trainee job in Altoona, Pennsylvania, on May 22, 2010, plaintiff was invited to a recruiting session on May 27, 2010. He did not attend and he was sent an email confirming that he would no longer be considered for that position. While it is unusual to invite an applicant to a recruiting session that is a considerable distance from his or her stated residence, a screener may elect to do this if very few people apply for the position, which was the case with this position (CD13653).

With the exception of James Waters, the Manager of Agreement Recruiting who assisted in responding to McKinzy's EEOC charges and a similar lawsuit filed against Norfolk in the District of Kansas, and Jamie Bellamy-Horne, the Assistant Manager of Agreement Recruiting, the individuals involved in processing McKinzy's applications from January 2009 to the present had no knowledge of his race or prior EEOC charges. Bellamy-Horne, who is African-

American, processed some of the jobs for which McKinzy applied and, because of McKinzy's pattern of filing numerous applications and then claiming discrimination or retaliation, she was explicitly instructed to give him the same consideration as anyone else would receive.

With the exception of two jobs (RB13270 and JB12931), McKinzy did not apply for any positions in Kansas City from January 2009 to the present. The person who screened applications for job number RB13270 was Sheila Voorheis. There were over 450 applicants for this position, and Voorheis did not know anything about McKinzy's race or prior EEOC charges when she decided not sent him a declination email. Voorheis also processed declination emails to 484 other applicants for that position. The person who processed applications for job JB12931 was Jamie Bellamy-Horne. There were over 150 applicants for this position. McKinzy was sent a declination email when that position was put "on hold" by Danny Saunders, Norfolk's budget manager for the Mechanical Department, who did not know anything about Plaintiff's race or prior EEOC charges when he made that decision, and there was never any discussion or consideration of placing a position on "hold" to avoid inviting McKinzy to a recruiting session. Bellamy-Horne also processed declination emails to 174 other applicants for that position.

The next closest jobs for which McKinzy applied during this period were based in Moberly, Missouri (CD13355), 175 miles from Overland Park, Kansas; and Wentzville, Missouri (CD13350), 220 miles from Overland Park, Kansas. The screeners for these positions had no knowledge of McKinzy's race or prior EEOC charges.

## Discussion

**A. Norfolk is entitled to summary judgment because its hiring decisions were made by individuals who were unaware that McKinzy is African-American, over 40 years-old, or that he had previously filed EEOC charges.**

McKinzy argues Norfolk violated federal civil rights laws because it failed to hire him (1) because he is African-American and (2) in retaliation for his having filed previous charges with the Equal Employment Opportunity Commission ("EEOC").

Where, as here, direct evidence of discrimination is absent, race discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010). Under *McDonnell Douglas* the plaintiff initially bears the burden of establishing a prima facie case of discrimination. *Id.* In the context of a failure to hire case the plaintiff must prove (1) he is a member of a protected class; (2) he was qualified for the positions; (3) he was denied the positions; and (4) he was treated less favorably than others. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006). To establish a case for retaliation the plaintiff must show (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998). Establishing a prima facie case creates a rebuttable presumption of discrimination. *Lake*, 596 F.3d at 873. The burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its employment decision. *Id.* If the defendant provides such a reason, the burden shifts back to the plaintiff to show the proffered reason is pretextual. *Id.*

A plaintiff cannot establish a prima facie case for failure to hire if he cannot show "that the challenged employment decision was made by someone who was aware of the plaintiff's status as a member of the protected class." *Todd v. Waste Mgmt. of Texas, Inc.*, No. Civ. A.SA-03-CA-314-X, 2004 WL 1456771, at *3 (W.D. Tex. June 30, 2004). With respect to retaliation claims, the plaintiff must similarly "show that the decision-makers knew of [his] protected activities in order to establish the causal link requirement of [his] *prima facie* case for retaliation." *Phillips v. TXU Corp.*, No. 3:05-CV-1588-B, 2006 WL 3900112, at *6 (N.D. Tex. Dec. 29, 2006); *Jackson v. United Parcel Service, Inc.* 548 F.3d 1137, 1143 (8th Cir. 2008). Here McKinzy's cannot establish a prima facie case because there is no evidence that the decision-makers knew he engaged in protected activity. It is undisputed that while Norfolk's job applicants are invited to disclose Equal Employment Opportunity information on a voluntary basis, this information is not accessed by or available to the job screeners. Indeed, there are some concrete examples of this lack of knowledge in the record: McKinzy applied for two Kansas City area jobs during the period January 2009 to the present. These positions were RB13270, which was processed by Ms. Voorhees who has swore an affidavit that she did not know anything about McKinzy's age, race, or prior EEOC charges, and JB12931 which was placed on hold by Mr. Saunders, who submitted an affidavit swearing he had no knowledge of McKinzy's age, race, or prior EEOC charges.

Even if McKinzy could somehow establish that some decision maker was aware of his race, his failure to hire claim would still fail because he has not shown he was treated less favorably than others. The record shows 484 other applicants were not hired for RB13270 and 174 other applicants were not hired for JB12931. McKinzy was invited to at least one recruiting session during the relevant time period, he just choose not to attend. There is no evidence on the

7

record that Norfolk placed any position "on hold" in order to avoid hiring him; nor is there any evidence that there was anything unusual or discriminatory about the fact that Plaintiff was not invited to other recruiting sessions during this period because the positions he applied for were at least 175 miles away from his residence.

Consequently there is no prima facie case of discrimination here. McKinzy's motion for summary judgment is DENIED and Norfolk's motion for summary judgment is GRANTED.

**B.    Norfolk is awarded its reasonable attorneys' fees under 42 U.S.C. § 2000e-5(k).**

This meritless case is not an isolated one, it is simply the most recent example of McKinzy's *pro se* litigation business in which he submits numerous on-line applications to various employers as a prelude to filing meritless discrimination and retaliation charges against those employers. Since 2007 McKinzy has filed 38 other lawsuits and 11 appeals—three lawsuits and one appeal against Norfolk alone—none of which has ever been found to have any merit. McKinzy has been warned about these lawsuits before. On June 12, 2009, the Honorable Carlos Murguia awarded Norfolk its reasonable attorney fees after granting it summary judgment in a similar lawsuit, *McKinzy v. Norfolk Southern Railroad*,[1] brought by McKinzy in the District of Kansas.[2] The Tenth Circuit Court of Appeals has also warned him about these cases. Norfolk now requests that it be awarded its attorneys' fees, and that the Court enjoin McKinzy from filing any *pro se* complaints or proceeding *in forma pauperis* against it in the future.

The "American rule" is that absent legislation providing otherwise, the parties bear their own attorneys' fees regardless of who prevails in the litigation. *Christiansburg Garment Co. v.*

---

[1] Case number 2:08-cv-02599-CM-JOP.
[2] Also on October 1, 2010, this Court ordered McKinzy to pay slightly more than $6,000 in attorneys' fees and costs in another case, *McKinzy v. Kansas City Power & Light*, No. 4:10-cv-00237-DGK, for filing a frivolous Title VII discrimination case. The Court will not consider the *Power & Light* award in deciding whether to take action against McKinzy in this case, because the Court had not deemed the *Power & Light* frivolous at the time he filed this one.

*EEOC,* 434 U.S. 412, 415 (1978). Although Congress has enacted 42 U.S.C. § 2000e-5(k), which allows for reasonable attorneys' fees to a prevailing party in a Title VII discrimination case, the Supreme Court has held that prevailing defendants should only be awarded attorneys' fees in the case of a lawsuit which is "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg,* 434 U.S. at 421. To restrict a litigant's future ability to file suit, however, the Court must find the litigant filed a meritless action "for obviously malicious purposes" and the litigant generally abuses the judicial process. *In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988).

The present case is patently unreasonable and without foundation, thus the Court awards Norfolk its reasonable attorneys' fees and costs incurred in defending this action. In determining a reasonable award of attorneys' fees the starting point is the time reasonably expended on the litigation multiplied by a reasonable or market rate of compensation. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). The Court also considers other factors, including whether the client has actually paid the requested fee, *Stark v. PPM, Inc.*, 354 F.3d 666, 675 (7th Cir. 2004). In the present case counsel has not submitted any detailed time sheets, expense records, or other documents, such as paid invoices, from which the Court could determine Norfolk's reasonable attorneys' fees and expenses. Accordingly the Court orders Norfolk to file a detailed memorandum with the Court on or before November 16, 2010, providing such information. Pursuant to Rule 54(d)(2)(B)(iv), the Court also orders counsel to disclose "the terms of any agreement about fees for the services for which the claim is made." Plaintiff will have fourteen days from the date the memorandum is filed to file any objections to the amount of the award. Norfolk will then have fourteen days to file any reply.

Furthermore, given that Judge Murguia previously warned McKinzy that the kinds of claims made in this lawsuit were "unreasonable and without foundation," and that filing additional "meritless suits on the grounds alleged in this action could be a basis for imposing sanctions in other pending or future actions," the Court finds that McKinzy brought this suit for a malicious purpose, namely to harass Defendant Norfolk, and that McKinzy has generally abused the judicial process here. *See Van Deelen v. City of Kansas City, Missouri*, 2006 WL 2077640, at *15-17 (W.D. Mo. July 24, 2006) (discussing similar abuse by a *pro se* litigant). Accordingly, the Court hereby enjoins Plaintiff Michael E. McKinzy, Sr., from filing any *pro se* lawsuits against Defendant Norfolk Southern Railroad in the Western District of Missouri without first receiving written leave to do so from either the undersigned judge or the Chief Judge of the Western District of Missouri.

## Conclusion

Because McKinzy has not established a prima facie case on any of his claims, Plaintiff's Motion for Summary Judgment (doc. 10) is DENIED and Defendant's Motion for Summary Judgment and Sanctions (doc. 12) is GRANTED. Summary judgment is entered for Defendant on all claims; Plaintiff is ordered to pay Defendant's reasonable attorneys fees which will be determined after subsequent briefing; and Plaintiff is enjoined from filing any *pro se* lawsuits against Defendant in this judicial district without written leave of court.

**IT IS SO ORDERED.**

Date:   October 25, 2010                        /s/ Greg Kays
                                                GREG KAYS, JUDGE
                                                UNITED STATES DISTRICT COURT